EUGENE C. GIORGIO *v.* NUKEM, INC.
(11378)

DUPONT, C. J., O'CONNELL and SCHALLER, Js.

Argued February 10—decision released May 4, 1993

*William M. Laviano,* for the appellant (plaintiff).
*Richard L. Newman,* for the appellee (defendant).

DUPONT, C. J. The plaintiff appeals from the trial court's granting of the defendant's motion for summary judgment. The plaintiff brought suit against the defendant, his former employer, alleging breach of a written employment agreement.[1] In his complaint, the plaintiff alleged that the defendant had orally represented to him that the employment termination clause of the parties' written employment agreement could be invoked by the defendant only if just cause existed for termination.[2] The trial court, on the basis of the plead-

---

[1] The complaint contained two counts. The first count alleged a breach of a covenant by the defendant to pay the plaintiff three months severance and health insurance upon termination of employment. Judgment for the plaintiff on the first count was rendered by the court on agreement of the parties on April 4, 1992. The grant of summary judgment challenged in this appeal pertains only to the second count.

[2] The first numbered paragraph of the written employment agreement states in its entirety: "Commencing on the date hereof Employer shall employ Employee in the [capacity of manager market development] until

ings, an affidavit of the defendant's president and chief executive officer, and excerpts from a transcript of the plaintiff's deposition, determined that any representations that may have been made concerning termination of employment only for just cause were made prior to the execution of the contract. The court concluded that the written employment contract was an integrated agreement, and, thus, parol evidence of the alleged prior oral representations was barred. The court further determined that the written employment contract constituted an at-will employment agreement. The court, therefore, granted the defendant's motion for summary judgment because it concluded that there was no genuine issue of material fact and the defendant was entitled to judgment as a matter of law. We affirm the decision of the trial court.

On February 9, 1987, the parties executed a written contract of employment. At that time, the plaintiff was a resident of Connecticut and the defendant had its principal place of business in White Plains, New York. The contract was the culmination of discussions between the parties that had taken place at the defendant's offices in New York, and by telephone between New York and the plaintiff's home in Connecticut. The contract was prepared and executed by the defendant in New York, but was signed by the plaintiff in Connecticut. The contract contemplated the plaintiff's employment as a manager of market development in the defendant's New York office. The contract contained an express provision stipulating that the agreement could be terminated by either party on two weeks prior written notice.

The plaintiff began his employment with the defendant in New York, but when the defendant subsequently moved its offices to Stamford, Connecticut, he worked there until his employment was terminated in October, 1989.

---

this Agreement shall be terminated by either party by not less than two weeks' prior written notice to the other."

The plaintiff contends that on numerous occasions during the interviewing process he was assured by members of the defendant's management team that his employment would not be terminated if he satisfactorily performed his job. The affidavit of the defendant's president and chief executive officer, however, asserts that no employee or representative of the defendant ever made any specific promises to the plaintiff, either before or after the execution of the employment contract, that his employment would be terminated only for just cause. Furthermore, the affidavit states: "Nukem terminated Mr. Giorgio's employment because he was ineffective and did not adequately fulfill his responsibility as an employee of Nukem, Inc." The plaintiff failed to submit any counteraffidavit rebutting these allegations. Because the trial court concluded that the contract was integrated, the court impliedly determined that any factual dispute indicated in the affidavit did not concern material facts.

The trial court determined that Connecticut choice of law rules dictated that New York law should apply in this case. The court further determined that under New York law, a written employment agreement is integrated as a matter of law, and thus all prior or contemporaneous statements that vary the terms of the agreement are barred under the parol evidence rule. Additionally, the court found that, on its face, the written agreement was an integrated at-will employment contract, and that under New York law, at-will employees may be discharged at any time for any reason except a reason prohibited by law. The court also determined that the result would be the same under Connecticut law.

Summary judgment is properly granted "if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mat-

ter of law." Practice Book § 384; *Lees* v. *Middlesex Ins. Co.,* 219 Conn. 644, 650, 594 A.2d 592 (1991). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." *Connell* v. *Coldwell,* 214 Conn. 242, 246–47, 571 A.2d 116 (1990). There is no dispute as to the underlying dispositive fact in this case, namely, that any representations made to the plaintiff concerning job security and the conditions under which his employment might be terminated were made prior to the execution of the written employment contract. The issue to be decided is whether the parol evidence rule prohibits the introduction of these prior oral representations to vary the terms of the written contract. The plaintiff claims that the trial court improperly (1) determined that New York law controls, (2) found that the written agreement was fully integrated, and (3) applied the parol evidence rule to the facts of this case.

The plaintiff advocates the application of Connecticut substantive law. A review of the case law from both Connecticut and New York confirms the trial court's determination that regardless of which state's substantive law is applied, the result in this case is the same because both jurisdictions would have applied the parol evidence rule.[3] The parol evidence rule "prohibits the

---

[3] In its memorandum of decision, the trial court properly stated the Connecticut choice of law rule. "The general rule is that the validity and construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction." *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 253, 205 A.2d 780 (1964); *Levy* v. *Daniels' U-Drive Auto Renting Co.,* 108 Conn. 333, 338, 143 A. 163 (1928).

We note, however, that our Supreme Court has recently begun to move away from the strict application of traditional choice of law rules in favor of the more flexible approach advocated in the Restatement (Second) of Conflict of Laws. See, e.g., *O'Connor* v. *O'Connor,* 201 Conn. 632, 519 A.2d

use of extrinsic evidence to vary or contradict the terms of an integrated written contract." *TIE Communications, Inc.* v. *Kopp,* 218 Conn. 281, 287–88, 589 A.2d 329 (1991); *Lester* v. *Resort Camplands International, Inc.,* 27 Conn. App. 59, 65, 605 A.2d 550 (1992); *Mastrangelo* v. *Kidder, Peabody & Co.,* 722 F. Sup. 1126, 1131 (S.D.N.Y. 1989) (applying New York law); 2 Restatement (Second), Contracts § 213.[4] More specifically, "when parties have merged all prior negotiations and agreements in a writing, intending to make that the repository of their final understanding, evidence of such prior negotiations and agreements will not be received to vary or add to the writing." *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885 (1955); *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 740, 557 A.2d 525 (1989); *Shelton Yacht &*

13 (1986) (adopting the Restatement [Second] approach to determine the substantive rights and obligations arising out of a tort controversy); see also *Cleveland* v. *U.S. Printing Ink, Inc.,* 218 Conn. 181, 588 A.2d 194 (1991) (choosing the Restatement [Second] approach for choice of law issues in workers' compensation cases); *Simaitis* v. *Flood,* 182 Conn. 24, 437 A.2d 828 (1980) (same). Moreover, in *O'Connor* v. *O'Connor,* supra, 658, our Supreme Court acknowledged that "we are not wholeheartedly committed to application of lex loci as the sole approach to choice of law in all torts cases . . . ." "We are, therefore, persuaded that the time has come for the law in this state to abandon categorical allegiance to the doctrine of lex loci delicti in tort actions." Id., 648. It is unclear, however, whether the time has also come similarly to abandon categorical allegiance to the doctrine of lex loci contractus in contract actions, especially "for those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result." Id., 650. In our opinion, the time has come to abandon the doctrine as stated in cases such as *Jenkins* v. *Indemnity Ins. Co.,* supra, and *Levy* v. *Daniels' U-Drive Auto Renting Co.,* supra. As an intermediate appellate court, we must follow existing case law. In the present case, however, it makes no difference whether we follow existing case law because New York was not only the place where the contract was made and the place where it was to be performed, but also the place with the most significant relationship to the circumstances. 2 Restatement (Second), Conflicts of Laws § 188.

[4] We note that the parol evidence rule "renders inoperative prior written agreements as well as prior oral agreements." 2 Restatement (Second), Contracts § 213, comment a.

*Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 254–55, 188 A.2d 493 (1963); *Marine Midland Bank-Southern* v. *Thurlow,* 53 N.Y.2d 381, 387, 425 N.E.2d 805, 442 N.Y.S.2d 417 (1981).

"An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." 2 Restatement (Second), Contracts § 209 (1); *Adler & Shaykin* v. *Wachner,* 721 F. Sup. 472, 476 (S.D.N.Y. 1988) (under New York law, an agreement is integrated if "the writing completely and accurately embodies all of the mutual rights and obligations of the parties"); *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* supra, 739–40. In order to determine whether a written agreement is integrated, a court must look to the intention of the parties. *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* supra. Evidence concerning the intention of the parties may be found in the conduct and language of the parties and the surrounding circumstances. Id. "Ordinarily, the intent of the parties to a contract is a question of fact to be determined by the trier of fact." *Jacob* v. *Seaboard, Inc.,* 28 Conn. App. 270, 273, 610 A.2d 189, cert. denied, 223 Conn. 923, 614 A.2d 822 (1992); *First Hartford Realty Corporation* v. *Ellis,* 181 Conn. 25, 33, 434 A.2d 314 (1980). If, however, " '[t]he trial court's conclusions as to intent were based not on such factors as the credibility of witnesses, or on the testimony of live witnesses as to the meaning of documents or as to circumstances surrounding the execution of those documents' "; *Jacob* v. *Seaboard, Inc.,* supra, 273–74; but were instead based on the intent expressed in the contract itself and the affidavits submitted with the motion for summary judgment "considered in the light of their surrounding circumstances. . . . [Then] the legal inferences to be drawn from the documents raise questions of law rather than of fact." (Citations omitted; internal quotation marks omitted.) Id., 274; *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53–54, 607 A.2d 424 (1992).

The agreement here contained several provisions relating to termination of employment. Thus, we can infer that the parties intended the agreement to be integrated on the issue of termination. *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* supra, 740. Intent to integrate, therefore, could be determined from the contract itself and the supporting documents submitted with the defendant's motion for summary judgment.

Here, the first numbered paragraph of the written employment agreement unambiguously addresses the issue of termination, and states that "this Agreement shall be terminated by either party by not less than two weeks' prior written notice to the other." Two of the other six numbered provisions of the contract place restrictions on the plaintiff's activities after his termination. The fourth provision prohibits the plaintiff from divulging information obtained during the course of his employment to the defendant's competitors, while the fifth is a one year noncompetition clause. Nowhere in the agreement is it specifically stated, or even implied, that termination shall occur only for just cause. We agree with the trial court that the written employment agreement is integrated with respect to the issue of termination, and the trial court thus properly refused to admit prior extrinsic evidence of the parties' alleged discussions regarding termination of employment only for cause.

Additionally, as parol evidence could not be properly introduced because the agreement was fully integrated on the issue of termination of employment, judgment for the defendant was proper. Under Connecticut law, "[t]raditionally, an employment contract of indefinite duration is terminable at the will of either party." *Battista* v. *United Illuminating Co.,* 10 Conn. App. 486, 495, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803,

525 A.2d 1352 (1987). In *Fisher* v. *Jackson,* 142 Conn. 734, 736, 118 A.2d 316 (1955), our Supreme Court set aside a jury verdict in favor of the plaintiff employee in an action to recover damages for breach of an oral agreement of employment. The plaintiff claimed that he was induced to give up a higher paying job in order to accept the defendant's alleged offer of lifetime employment. The court held that the plaintiff's action did not lie because "[i]n the absence of a consideration in addition to the rendering of services incident to employment, an agreement for permanent employment is no more than an indefinite general hiring, terminable at the will of either party without liability to the other." Id.

The case law in New York is in accord with that of Connecticut. "It is still well settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay* v. *Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 506 N.E.2d 919, 514 N.Y.S.2d 209 (1987). Additionally, any limitation on the employer's right to terminate must be expressly stated. *Mastrangelo* v. *Kidder, Peabody & Co.,* supra, 1130; *Sabetay* v. *Sterling Drug, Inc.,* supra. Because there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, the trial court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.